THE EAGLE IRON WORKS, Appellant, v. THE TOWN OF
GUTHRIE CENTER.

**Construction Writing:** WARRANTY. A guaranty of a specific amount
of water, to be furnished by waterworks, to be constructed for a
town, is not modified by the fact that the town, for the informa-
tion of bidders, in its specifications stated the depth and thickness
of the water-bearing strata, with the requirement that the well
should be sunk to certain depth.

*Appeal from Guthrie District Court.*—HON. J. H. HEN-
DERSON, Judge.

FRIDAY, JANUARY 31, 1896.

ACTION at law to recover a balance alleged to be
due to the plaintiff, upon a contract to construct wat-
erworks for the defendant.    There was a trial by jury,
and a verdict and judgment for the defendant.    Plaint-
iff appeals.—*Affirmed.*

*Bishop, Bowen & Fleming* for appellant.

*E. R. Sayles* and *F. O. Hinkson* for appellee.

ROTHROCK, C. J.—I.    It is conceded that the defend-
ant has not paid the full contract price for construct-
ing the waterworks.    The defense is founded upon the
claim that the plaintiff did not perform its agreement.
This involves a construction of the written contract.
The defendant had plans and specifications prepared,
and invited bids from contractors.    The plaintiff was
the successful bidder.    It is not necessary to set out the
specifications and contract in full.    It is conceded that
the works put in by the plaintiff did not, and would
not meet the requirements of the specifications, for
the reason, mainly, that the supply of water was

insufficient to meet the stipulated requirements; and we will set out that part of the writings which has reference to the sufficiency of the water supply. That part of the specifications which refers to that subject is as follows: "The contractors for the well or wells, will furnish their own specifications and plans of the system which they propose to use, said system to furnish at least five hundred thousand gallons of good water per twenty-four hours, actual test. Said system will be at an average depth of thirty-five feet (the depth of the water-bearing strata is about twenty-five feet, and wells driven in the locality have driven about fifteen feet below this depth without passing through the strata, indicating that the depth of the water vein is at least fifteen feet.) The test of the well or wells will be of the same duration as the test of the pumping machinery. The contractor for the water supply is to guarantee the supply. The working of the well or wells will be subject to the same condition as shown in the general remarks at the end of the specifications on pumping machinery. * * * " The stipulation in the contract with reference to the water supply is as follows: "Said second party [the plaintiff] also agrees to furnish a system of wells which said second party shall guarantee to furnish a supply of at least five hundred thousand gallons of good water, per twenty-four hours, for fire and culinary purposes."

It is argued on behalf of the plaintiff, that its guaranty to furnish a sufficient supply of water, is controlled by that part of the specifications which we have above set out. We do not concur in such a construction of the contract. The specifications do not undertake to give the capacity of the water-bearing strata. That part of the specifications is no more than a statement for the information of bidders. The representation that drive wells had been put down in that

locality, and water obtained, was not an undertaking that any number of drive wells would supply five hundred thousand gallons of water daily; and we suppose that the guaranty was exacted because the securing of the water supply was a matter of doubt. The plaintiff abandoned the work without furnishing a sufficient supply of water, and the defendant refused to accept the work as a completed job. The thought that the plaintiff had complied with its contract did not occur to its officers until some time after it ceased to do any work on the plant. The defendant insisted that it should be completed, and in several letters, written afterwards, the plaintiff in the most positive terms acknowledged its obligation to furnish a sufficient supply of water to fulfill its guaranty. To make its obligation and promise emphatic, it used the following language in one of its letters: "We have determined to give you a half million gallons of water a day if we have to run a pipe from Des Moines to do it. As soon as we are ready, we will put on force enough to make the changes in a very short time, and without the least inconvenience to your water supply." Plaintiff's counsel claim that the contract should receive that construction which will best effectuate the intention of the parties, and they cite Clark on Contracts, 590, 591, as follows: "Greater regard is to be had to the clear intent of the parties than any particular words which they may have used in the expression of their intent. If the meaning is not clear, the court will consider the circumstances under which the contract was made, the subject-matter, the relation of the parties, and the object of the agreement, in order to ascertain their intention, and for this purpose parol evidence is admissible." If we should apply these rules, it is very plain that the proper construction of this contract is that the plaintiff's guaranty was absolute.

Complaint is made of the refusal to give instructions to the jury asked by the plaintiff, and of instructions given by the court on its own motion. In the view we take of this contract, there was no error prejudical to plaintiff in the matter of the charge to the jury. It appears that the court gave some force to that part of the specifications which we have above set out, and instructed the jury that, if the plaintiff sunk the wells to an average depth of thirty-five feet, it was a compliance with the contract. We think this was more favorable to the plaintiff than was warranted by the contract; but, even under that instruction, the evidence supported the finding of a verdict that, if the plaintiff had properly constructed wells to that average depth from the surface of the ground, the supply of water would have been sufficient. The supply was attempted to be obtained by a number of drive wells. While one of them might furnish sufficient water for the ordinary purposes of a dwelling house, when all of them were connected with the steam pump, the water pumped was mixed with sand so that it injured and damaged the pumping machinery. The town, being without an adequate supply of water, sunk four open wells, which relieved the situation to some extent.

There was evidence tending to show that the proper manner to obtain a supply of water was to sink a well about twenty-five feet in diameter, and wall it, part of the depth, with brick laid in cement, to keep out quicksand; and a witness was asked to estimate the cost of such a well. The plaintiff objected to this evidence, and the objection was over-ruled, and we think the ruling was right. There are other questions made by counsel which we do not think demand special consideration. We discover no error, and the judgment of the district court is AFFIRMED.